IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAISHA HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>MOTHERS MAKING A CHANGE and HEALTHCARE STAFFING, INC.,<br><br>Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

COMES NOW, Maisha Harris ("Plaintiff" or "Ms. Harris"), and files this Complaint against Defendants Cobb-Douglas Community Services Board, d/b/a Mothers Making a Change ("Defendant MMAC") and Healthcare Staffing, Inc. ("Defendant HS")(collectively, "Defendants"), and shows the following:

## I. NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") and the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et. seq.* ("Section 1981").

## II.     ADMINISTRATIVE PROCEDURES

2.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII.  Plaintiff filed her Charge of Discrimination with the EEOC on May 26, 2017 and amended Charge of Discrimination on October 1, 2019.

3.

The EEOC issued a "Notice of Right to Sue" on September 15, 2020, entitling an action to be commenced within ninety (90) days of receipt of that notice.

4.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## III.     JURISDICTION AND VENUE

5.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1981.

6.

Defendant MMAC is a drug treatment rehabilitation facility qualified to do business in this district. Defendant HS is a staffing company qualified to do business in this district. In addition, the acts and omissions that give rise to Plaintiff's claims occurred in this district. Accordingly, venue in this Court is proper pursuant to 29 U.S.C. §1391.

## IV. PARTIES

7.

Plaintiff is an African-American female citizen of the United States of America and is subject to the jurisdiction of this Court.

8.

At all times relevant Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

9.

Defendant MMAC is now and, at all times relevant hereto, has been a rehabilitation center engaged in an industry affecting commerce. During all times relevant hereto, Defendant MMAC has employed fifteen (15) or more employees


for the requisite duration under Title VII.  Defendant MMAC is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

10.

Defendant MMAC may be served with process by delivering a copy of the summons and complaint to its office at 3830 S Cobb Drive SE, Smyrna, GA 30080.

11.

Defendant HS is now and, at all times relevant hereto, has been a staffing agency engaged in an industry affecting commerce.  During all times relevant hereto, Defendant HS has employed fifteen (15) or more employees for the requisite duration under Title VII.  Defendant HS is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

12.

Defendant HS may be served with process by delivering a copy of the summons and complaint to its Registered Agent, United States Corporation of America, Inc., at 1420 Southlake Plaza Drive, Morrow, GA 30260.

## V.     FACTUAL ALLEGATIONS

13.

Ms. Harris began working for Defendant Healthcare Staffing, Inc. on or about December 1, 2016.

14.

Defendant Healthcare Staffing assigned Ms. Harris to work at Defendant's Mothers Making A Change Program ("MMAC") as a Client Support Worker.

15.

Mothers Making A Change Program provides substance abuse treatment to pregnant and/or women with children under the age of 18 who have drug and alcohol related issues.

16.

Ms. Harris worked with the women in the residential program.  Part of her responsibilities included making sure that the clients were adhering to the rules. For example, alcohol and drugs were strictly prohibited, and the clients were not allowed to have men over.

17.

When a client was caught breaking a rule, the Client Support Worker would document the infraction in the group email at the end of the shift.  Infractions could result in the client being kicked out of the program.

18.

In early 2017, Ms. Harris noticed that the Coordinator for the program, Christina Bell, would downplay her reports of clients breaking the rules.

19.

Ms. Bell, as well as another Client Support Worker, Adriane Adams, would often make race-based comments and racial comparisons.

20.

For example, they said that Black women are more sensitive than white women when it came to rules.

21.

They said that Black women take things more seriously than white women.

22.

They said that Black women complain more.

23.

They said that Black women are more vocal.

24.

They made comparisons between Black and white babies, suggesting that Black babies were fussier and did not sleep as well as white babies.

25.

Ms. Harris witnessed such race-based comments and/or race-base comparisons approximately three times a week.

26.

Both Ms. Bell and Ms. Adams are white.

27.

At the time, there were few Black employees working at MMAC

28.

At the time, the client population was predominantly white women.

29.

In early March 2017, Ms. Harris began complaining that her reports of client infractions were not being taken seriously.

30.

Ms. Harris verbally complained to Ms. Bell and Ms. Adams that she felt her reports were not being taken seriously because she was Black.

31.

Ms. Harris also told Ms. Bell that she was uncomfortable with the racial comparisons, and though Ms. Bell was entitled to her opinion, that MMAC still needed to follow through when there was a policy violation.

32.

Despite this, Ms. Harris continued to report incidents as they occurred, while noting in the group email that it did not seem like things were changing.

33.

On April 18, 2017, Ms. Harris submitted a written complain of race discrimation to both Defendants.

34.

The following day, Defendant MMAC told Ms. Harris about purported complaints filed by clients against her.

35.

Ms. Harris was removed from the schedule and told that an investigation into would be conducted.

36.

Defendant MMAC was aware that clients who had been reported for breaking the rules often attempted to retaliate against the employee involved by fabricating complaints.

37.

Ms. Harris was not given the opportunity to address the allegations

38.

Defendants never responded to her written complaint of discrimination.

39.

Ms. Harris attempted to follow up regarding the status of the investigation but was never returned to work.

40.

It was not until Ms. Harris applied for unemployment and a hearing was held with the Georgia Department of Labor that she discovered that Defendants claimed to have terminated as a result of alleged complaints.

41.

Although Defendants purport to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

42.

Others outside of the Ms. Harris's protected class, i.e. white employees, were treated differently.

43.

During Ms. Harris's employment, another Client Support Worker, Julie, had received complaints from clients.

44.

Julie, a white woman, was not terminated.

## VI.   CLAIMS FOR RELIEF

### COUNT ONE:  DISCRIMINATION IN VIOLATION OF TITLE VII

45.

Plaintiff re-alleges paragraphs 13-44 as if set forth fully herein.

46.

Defendants' actions in subjecting Plaintiff to ongoing race discrimination constitute unlawful discrimination on the basis of Plaintiff's race in violation of Title VII.

47.

Defendants willfully and wantonly disregarded Plaintiff's rights, and their discrimination against Plaintiff was undertaken in bad faith.

48.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect her status as an employee because of her race.

49.

As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

50.

Accordingly, Defendants are liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination and retaliation.

## COUNT TWO:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

51.

Plaintiff re-alleges paragraphs 13-44 as if set forth fully herein.

52.

Defendants' actions, as detailed above, in retaliating against Plaintiff because of her protected activity constitutes unlawful intentional retaliation in violation of Title VII.

53.

Defendants willfully and wantonly disregarded Plaintiff's rights, and Defendants' retaliation against Plaintiff was untertaken in bad faith.

54.

Accordingly, Defendants are liable for the damages Plaintiff has sustained as a result of Defendants' unlawful retaliation.

**COUNT THREE: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

55.

Plaintiff re-alleges paragraphs 13-44 as if set forth fully herein.

56.

Defendants subjected Plaintiff to discrimination on the basis of her race.

57.

Defendants' actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. section 1981.

58.

The effect of the conduct was to deprive Plaintiff of economic opportunites, and otherwise adversely affect Plaintiff's status as an employee because of her race.

59.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected her psychological and physical well being.

60.

As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has been embarrassed, humiliated, and has suffered damage to her emotional health and has lost back pay and front pay.

61.

Defendants have willfully and wantonly disregarded Plaintiff's rights, and Defendants' discrimination against Plaintiff was undertaken in bad faith.

62.

Defendants chose not to take appropriate remedial steps to prevent or correct the harassment.

**COUNT FOUR:  VIOLATION OF 42 U.S.C. § 1981 RETALIATION**

63.

Plaintiff re-alleges paragraphs 13-44 as if set forth fully herein.

64.

Plaintiff engaged in protected conduct when she complained about race-based discrimination.

65.

Defendants subjected Plaintiff to adverse employment actions after Plaintiff engaged in protected conduct.

66.

There was a causal connection between the protected conduct and the adverse action.

67.

As a direct and proximate result of these actions, Plaintiff has suffered damages.

68.

Defendants, therefore, are liable for the damages caused proximately resulting from its retaliation.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)   General damages for mental and emotional suffering caused by Defendants' misconduct;

(b)   Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Reasonable attorney's fees and expenses of litigation;

(d) Trial by jury as to all issues;

(e) Prejudgment interest at the rate allowed by law;

(f) Declaratory relief to the effect that Defendants have violated Plaintiff's statutory rights;

(g) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendants from further unlawful conduct of the type described herein; and

(h) All other relief to which she may be entitled.

Respectfully submitted the 26th day of October, 2020.

**BARRETT & FARAHANY**

s/ *Adian R. Miller*
Adian R. Miller
Georgia Bar No. 794647

*Attorney for Maisha Harris*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
adian@justiceatwork.com